[Cite as *Mundy v. Centrome, Inc.*, 2024-Ohio-1001.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |  |
|---|---|---|---|
| PAMELA DUFF MUNDY, ADM., et al., | : | | |
| Appellees, | : | | CASE NO. CA2023-06-050 |
| | : | | O P I N I O N |
| - vs - | | | 3/18/2024 |
| | : | | |
| CENTROME, INC., et al., | : | | |
| Appellants. | : | | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CV90268

Stites & Harbison, PLLC, and Cassandra L. Welch and Robin D. Miller; and David B. Owsley, for appellant, Mane, Inc.

Robbins, Kelly, Patterson & Tucker, and Michael A. Galasso and Jarrod M. Mohler; and TorHoerman Law, LLC, and Kenneth J. Brennan and Jacob W. Plattenberger, for appellees, Pamela Duff Mundy, Adm. of Estate of James Melvin Duff, Dec'd., and Joshua Humphries and Kyle Landreth.

Lindhorst & Dreidame Co., LPA., and James F. Brockman; and Stinson LLP, and Michelle L. Corrigan Erikson and Jessica L. Knox, for appellee, O'Laughlin Industries, Inc.

G. Todd Hoffpauir, for appellee, Elan Chemical Company, Inc.


**S. POWELL, P.J.**

{¶ 1}   Defendant-appellant, Mane, Inc., appeals from a decision of the Warren

County Court of Common Pleas ordering it to pay attorney fees and expenses as sanctions under Civ.R. 37(C) to defendant-appellee, O'Laughlin Industries, Inc. ("OLI"), and plaintiffs-appellees, Pamela Duff Mundy, as Administrator of the Estate of James Melvin Duff, deceased, Joshua Humphries, and Kyle Landreth (collectively, "plaintiffs"), following a determination that Mane violated its duty to supplement discovery responses under Civ.R. 26(E). Because we conclude that the trial court's findings do not show that Mane violated the duty to supplement, we reverse the court's decision that found the violation and we vacate its order awarding sanctions.

## I. Procedural and Factual Background

{¶ 2}  Mane, a major flavoring company with locations around the world, employed plaintiffs in its Lebanon, Ohio, manufacturing facility.[1] During their employment from 2012 to 2016, plaintiffs had been exposed to diacetyl, an ingredient used in microcap flavors distributed to Mane by OLI and eight other distributors.[2] The plaintiffs claim that exposure to diacetyl at Mane caused respiratory illnesses and lung disease. In September 2017, they filed suit against Mane, OLI, and other diacetyl distributors. Against Mane, plaintiffs claimed an intentional tort and negligence under the Ohio Product Liability Act, alleging inadequate warnings and intentional misrepresentation of risks by Mane. Mane denied that it had created or knew about the conditions that had made plaintiffs ill. Mane argued that knowledge of the danger was not reasonably available and that plaintiffs' exposure to diacetyl was minimal. OLI, on the other hand, claimed the defense that plaintiffs'

---

1. In addition to James Melvin Duff, Joshua Humphries, and Kyle Landreth, several other employees were also named as plaintiffs in the action. The trial court severed Duff's, Humphries', and Landreth's claims from those of the other plaintiffs, stating in an order that those claims "shall be treated together in one proceeding * * * for the purposes of case specific discovery and trial * * *." The other plaintiffs' claims remain pending, and they are not parties to the present appeal.

2. The other eight diacetyl distributors were Centrome, Inc., d.b.a. Advanced Biotech; Berje Inc.; Elan Chemical Co., Inc.; Vigon International, Inc.; Charkit Chemical Corp.; Alfrebro, LLC; Wild Flavors, Inc.; and Archer-Daniels-Midland Co. None of these distributors is party to the present appeal.

sophisticated employer fulfilled the duty to warn about diacetyl hazards.

{¶ 3}   The plaintiffs and OLI sought documents from Mane.  In July 2018, plaintiffs requested documents related to diacetyl exposure hazards and protective measures.  In particular, they requested safety data sheets, handling instructions, and air sampling reports.  Mane objected to these requests, claiming that they were vague, overbroad, and irrelevant.  Despite these objections, Mane referred to specific documents that it had produced in response to the requests.  OLI served its First Set of Requests for Production of Documents on Mane in February 2020.  OLI sought documents regarding diacetyl hazards, knowledge acquisition, and the dissemination of information about diacetyl to employees across Mane's facilities, including the Lebanon facility.  Three requests in particular sought documents containing information about correspondence concerning risks, respiratory protective equipment, and policies related to diacetyl handling from January 1, 2011 to the present.  Mane responded to these document requests, in part, with an objection that they were overly broad and irrelevant.  But Mane also indicated it had already produced documents related to diacetyl risks, respiratory protection, and policies and procedures.  In July 2020, OLI served additional document requests on Mane that included a request for documents containing information about when and how Mane learned about diacetyl health hazards.  Mane objected, stating the request was overly broad and irrelevant, but Mane also said that it had already produced responsive documents.

{¶ 4}   Plaintiffs and OLI also conducted depositions.  In October 2018, March 2020, and May 2020, they deposed Mane's corporate representative, Jordan Pearman.  OLI's questions focused on Mane's knowledge of diacetyl hazards.  Mane sought to limit questioning to hazards specific to the Lebanon facility where plaintiffs worked.  During Pearman's deposition, it was apparent that in 2015 Mane made significant changes at its

Lebanon facility regarding diacetyl handling. These changes had been driven by three factors: employee protection, compliance with the Global Harmonized System, and recommendations from a new safety manager. When OLI's counsel asked about diacetyl handling at other Mane facilities, Mane's counsel restricted Pearman's testimony to diacetyl handling at the Lebanon facility. In August 2020, Mane's environmental health and safety specialist, Todd Valli, was deposed. Valli testified that he learned about diacetyl hazards around 2014 but that his predecessor, Jennifer Bokovoy, had been aware of the hazards earlier due to her work on diacetyl-handling controls at Mane's Milford, Ohio, facility.

{¶ 5} OLI was concerned by the deposition testimony. Mane had not produced any documents about diacetyl-handling controls before 2014 or about Bokovoy's role in them. OLI then had the idea to make a Freedom of Information Act ("FOIA") request for information from the Occupational Safety and Health Administration ("OSHA"). And in December 2020 and January 2021, OSHA responded with documents revealing that Mane had been cited for diacetyl-exposure violations at its Milford facility. In 2011, Mane was found to have inadequate records and hazard communication training. In 2013, OSHA notified Mane that, the previous year, an employee had been overexposed to diacetyl despite wearing respiratory protection. The diacetyl levels had exceeded the respirator's maximum use concentration.

{¶ 6} After receiving these OSHA documents, OLI sought to depose a Mane employee again about diacetyl hazards. Initially, Mane declined to produce a witness. While OLI tried to work out this discovery matter with Mane, plaintiffs learned about the OSHA diacetyl-related citations. And in December 2020, they filed additional discovery requests on Mane. The following month, plaintiffs filed a motion for sanctions against Mane under Civ.R. 37(C) based on its failure to produce information relating to the OSHA

investigations and citations in response to plaintiffs' first discovery requests.

{¶ 7} On January 20, 2021, the day before a scheduled status conference, Mane produced over 2,700 pages of new documents, ostensibly in response to plaintiffs' additional requests. The newly produced documents revealed that Mane faced OSHA fines and citations multiple times before 2015, when it modified its diacetyl handling practices. The documents further showed that air-sampling reports and exposure assessments from 2009 to 2015 indicated imminent exposure (not just potential risks), that Mane had overexposed employees to diacetyl, that it was concerned about media reports about diacetyl exposure, and that Mane had communicated with insurance adjusters regarding the OSHA citations. The new documents also revealed that, by December 2013, Mane was aware of a 5-parts-per-billion recommended exposure limit for diacetyl. This raised concern for plaintiffs, as one of their experts believed that OLI shared liability for not warning Mane about diacetyl hazards, including exposure limits. The expert's opinion hinged on Mane's lack of awareness of the 5-parts-per-billion limit. Regarding air-sampling reports, until then Mane had provided only one air-sampling report. Known as the Morris Report, it assessed airborne diacetyl levels in a room where plaintiffs worked at the Lebanon facility. Among the new documents, though, were multiple air-sampling reports, some showing diacetyl-exposure levels up to 13,000 parts per billion—over 260 times higher than the levels documented in the Morris Report. On February 2, 2021, Mane supplemented its initial responses to OLI's document requests with the new documents.

{¶ 8} Subsequently, on February 10, OLI filed against Mane a combined motion for sanctions and to compel, arguing that Mane had withheld relevant documents while misleading OLI into believing it had produced all responsive materials. OLI asserted that the new documents "show[ed] that the testimony of Mane's corporate representative so

- 5 -

far was at best incomplete and at worst inaccurate." It was OLI's contention that Mane had prevented discovery on the issue of its knowledge of diacetyl hazards and had wasted the parties' and their experts' resources and time. OLI asked the trial court for an order compelling Mane to produce a witness to testify about its knowledge of diacetyl hazards and to pay OLI's attorney fees and costs related to the need to retake depositions and update expert reports based on the new information, though OLI did not cite a particular basis for the sanctions. Also on February 10, plaintiffs filed a supplemental motion for sanctions against Mane. They alleged that Mane had intentionally withheld relevant documents, provided false deposition testimony, and failed to correct inaccurate discovery responses. Plaintiffs sought various sanctions under Civ.R. 37(C), including that the trial court strike Mane's answer and order Mane to pay costs and attorney fees. Mane opposed OLI's and plaintiffs' motions for sanctions, arguing that all the parties had known that discovery was limited to the Lebanon facility.

{¶ 9} On March 24, 2021, after a hearing, the trial court granted OLI's motion and partially granted plaintiffs' motion. The court found that Mane's failure to supplement its initial discovery responses under Civ.R. 26(E) was actionable under Civ.R. 37(C). The court found that the new documents produced on January 20, 2021, were responsive to plaintiffs' and OLI's requests for documents. The court discussed the case's history, noting its three-year duration and imminent trial, and found that Mane's failure to timely produce the relevant documents disrupted the timeline. The court observed that Mane's narrow view of the case differed from plaintiffs and OLI's view and that Mane's objections lacked clarity and hindered discovery. The court found that Mane's behavior warranted sanctions, because it was evasive and incomplete, if not outright dishonest. So the court ordered Mane to pay plaintiffs' and OLI's attorney fees and costs related to the discovery hearing and additional depositions and to pay the costs to update expert reports. The

court also ordered Mane to produce a corporate representative for deposition.

{¶ 10} On August 18, 2021, the trial court issued a second order that determined OLI's and plaintiffs' reasonably necessary and substantially related expenses. The court awarded OLI attorney fees of $66,207 and costs of $9,305.21 and awarded plaintiffs attorney fees of $96,058.50 and costs of $3,008.64. Curiously, the court awarded these expenses under R.C. 2323.51(B)(1), as a result Mane's frivolous conduct.

{¶ 11} Mane appealed the award. One of Mane's arguments was that the trial court had erred by awarding the expenses under R.C. 2323.51, because the parties had not moved for sanctions under that statute nor had Mane received notice that frivolous-conduct sanctions would be considered. We agreed, finding that the court had failed to comply with the statutory requirements to award sanctions under R.C. 2323.51. So we reversed the August 18, 2021 award, and we remanded the matter for the trial court either to comply with the requirements of R.C. 2323.51 in awarding sanctions for frivolous conduct or to issue an order awarding sanctions for the Civ.R. 37(C) violations that the trial court had found. *See Mundy v. Centrome, Inc.*, 12th Dist. Warren No. CA2022-03-014, 2023-Ohio-1321, ¶ 36 ("*Mundy I*").

{¶ 12} On remand, the trial court chose the latter option, and on May 25, 2023, it issued an order, amended June 1, 2023 (to include final, appealable order language), awarding OLI and plaintiffs the same amounts under Civ.R. 37(C) for attorney fees and costs that the court had awarded them in its August 2021 order.

{¶ 13} Mane appealed.

## II. Analysis

{¶ 14} Mane presents seven assignments of error for our review. Our resolution of the second assignment of error is dispositive of the appeal, rendering moot the remaining assignments of error.

{¶ 15} The second assignment of error alleges:

> The trial court erred by allowing Rule 37(C) as a means for Appellees to bypass Mane's objections and seek sanctions without first complying with the motion to compel process in Rule 37(A).

{¶ 16} Mane argues here that the trial court erred by imposing sanctions under Civ.R. 37(C) for failing to supplement its discovery responses. Mane contends that it had no duty to supplement its prior discovery responses under Civ.R. 26(E).

{¶ 17} "It is well established that a trial court has broad discretion over discovery matters." (Citation omitted.) *Long v. Harding*, 12th Dist. Butler No. CA2020-11-120, 2021-Ohio-4240, ¶ 35. And, as a general matter, "[t]he discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256 (1996). These rulings, therefore, are reviewed merely for an abuse of discretion. *Id.* But when "a trial court's order is based on an erroneous standard or a misconstruction of the law, [d]e novo review is appropriate." *Gulbrandsen v. Summit Acres, Inc.*, 4th Dist. Washington No. 14CA26, 14CA27, 2016-Ohio-1550, ¶ 32 (quotations removed.). "Thus, when a party claims that a trial court improperly determined that the civil rules authorized sanctions in the first place, appellate courts will independently review whether the trial court properly construed the law." *Id.*

### A. Mane did not violate Civ.R. 26(E)

{¶ 18} "'Civ.R. 37 provides a mechanism by which discovery rules can be enforced.'" *Mundy I*, 2023-Ohio-1321, at ¶ 32, quoting *Rardin v. Salon Professional Academy, LLC*, 6th Dist. Wood No. WD-16-011, 2017-Ohio-410, ¶ 17. Civ.R. 37(C) is used to enforce a party's duty to supplement discovery responses imposed in Civ.R.

26(E).[3]  We are concerned here in particular with Civ.R. 37(C)(1), which provides:

> **(C)  Failure to supplement an earlier response or to admit.**
>
> **(1)  Failure to supplement.** If a party fails to provide information or identify a witness as required by Civ.R. 26(E), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
>> **(a)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>
>> **(b)** may inform the jury of the party's failure; and
>>
>> **(c)** may impose other appropriate sanctions, including any of the orders listed in Civ.R. 37(B)(1)(a) through (f).

{¶ 19}    The duty to supplement in Civ.R. 26(E) is this:

> **(E)  Supplementation of responses.**
>
> A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
>
>> **(1)** A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.
>>
>> **(2)** A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response.

---

3. Civ.R. 37, including division (C), was amended on July 1, 2023.  But the version of the rule that is the focus here, the one that was in effect when the trial court made its ruling, is the July 1, 2016 version.  (The rule was also amended on July 1, 2021, but those amendments did not affect division (C) and are not relevant here.)  So all references to Civ.R. 37 in this opinion are to that previous version, unless otherwise specified.  Civ.R. 26 has also been amended, but none of the changes is relevant here.

**(3)** A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through requests for supplementation of prior responses.

A staff note to Ohio Rule 26 explains the supplementation duty this way:

[Rule 26(E)] introduces the concept of the continuing burden to supplement responses which were previously made during discovery. Under this rule a party has no general duty to supplement a response that was complete when made, but the rule does require a party to supplement his responses: (1) when the responses concern the identity and location of witnesses and the identity of and subject matter of expert witnesses who are expected to testify at trial and (2) when the party knows or later determines that the original response was incorrect. The rule then states that at any time before the trial, the court may order, or the parties agree upon, supplemental responses.

1970 Staff Notes, Civ.R. 26. And a note from the Federal Rules Advisory Committee on the analogous federal rule explains the supplementation duty similarly:

Subdivision (e) -- Supplementation of Responses. The rules do not now state whether interrogatories (and questions at deposition as well as requests for inspection and admissions) impose a "continuing burden" on the responding party to supplement his answers if he obtains new information. The issue is acute when new information renders substantially incomplete or inaccurate an answer which was complete and accurate when made. * * *

Federal Rules Advisory Committee's Note, Federal Rule 26, 1967 Preliminary Draft. (The interpretation of a federal rule "is appropriate and persuasive authority in interpreting a similar Ohio rule." *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, ¶ 24.) It is apparent from the text of the rule and the notes that the supplementation duty applies mostly to new information—"information thereafter acquired," as Civ.R. 26(E) puts it. In sum, then, a party has no duty to supplement its prior complete discovery responses with new information except in the three situations listed in the rule.

{¶ 20} Here, the information that the trial court found Mane had withheld was not

- 10 -

new.  The court found, in its March 22, 2021 decision, that Mane had failed to make complete responses to several of plaintiffs' and OLI's initial requests for production of documents but had withheld documents containing pertinent information, producing them only after plaintiffs and OLI learned that Mane had them.  The court found that "many, if not most, of these documents should have been produced under [the] prior discovery requests."  "[T]he documents at issue were responsive to [discovery requests from both plaintiffs and OLI] and should have been turned over prior to the January 21, 2021 disclosure."  This, said the court, "is sufficient to entitle the plaintiffs and OLI to sanctions under Civ.R. 37."  The court further noted that "Mane did respond in part to the discovery requests" but that "it failed to completely respond and provide all of the discovery requested, so any failure to supplement those responses would be actionable under Civ.R. 37(c) [sic]."  The trial court further found that Mane's failure to produce the documents was disruptive and willful:

> This case is approximately 3 1⁄2 years old and six months away from what appears to now be an unrealistic trial date.  Depositions have been conducted.  Expert reports have been prepared and exchanged.  While all this work was being done, Mane was in possession of documents that are relevant, discoverable and the subject to prior discovery requests.  Mane also knew or should have known that the disclosure of these documents was necessary to reasonably supplement and/or correct prior responses.

Mane's position was that it had made complete responses—to the extent noted in its objections.  But the trial court found that the objections were inadequate:

> Manes' objections do not sufficiently place other parties on notice that there may be documents in Mane's possession that it is unwilling to produce, nor do the objections make clear that Mane is not even going to undertake to look for them because of the hyper-technical and overly legalistic nature of the response.

The problem, said the court, is that "Mane has an overly narrow view of the scope of the case that is not shared by the Plaintiffs and OLI."  In sum: "Mane was in possession of documents that are relevant, discoverable and the subject to [sic] prior discovery

- 11 -

requests. Mane also knew or should have known that the disclosure of these documents was necessary to reasonably supplement and/or correct prior responses."

{¶ 21} Based on the trial court's findings, it is apparent that what Mane failed to do was not to supplement its responses but rather to make a complete response to plaintiffs' and OLI's requests for production of documents. The belatedly produced documents were not documents that Mane acquired after it had made its original discovery responses. Rather, those documents had been in Mane's possession and Mane had been aware of them at the time that it had made its original responses.

{¶ 22} We do not think that a discovery response that is incomplete when made constitutes a violation of the supplementation duty in Civ.R. 26(E). The plaintiffs and OLI cite no legal authority for such a proposition. The two cases that they, and the trial court, do cite are not analogous. In *Babb v. Ford Motor Co.*, 41 Ohio App.3d 174 (8th Dist. 1987), the court expressly found that "Civ. R. 37(A) governed this motion, since it concerned allegedly evasive or inaccurate responses, rather than a failure to respond." *Babb* at 181. And in *Heaton v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 104636, 2017-Ohio-7479, Civ.R. 37(C) governed because affidavits executed after the initial discovery responses directly contradicted written interrogatory responses. The court explained that once the affidavits were executed the responding party was aware that the interrogatories were required to be updated or supplemented under Civ.R. 26 but failed to do so. In contrast, in the present case, the documents that Mane failed to produce were not newly acquired, and there was no direct contradiction between them and Mane's initial responses.

{¶ 23} Because the trial court's findings, and the record, do not show that Mane violated its Civ.R. 26(E) duty to supplement, the court could not impose sanction under Civ.R. 37(C).

## B. The court should have applied Civ.R. 37(A)

**{¶ 24}** The applicable rule in this situation, as Mane argued, was Civ.R. 37(A), which permits a party to file a motion for an order compelling a discovery response. Civ.R. 37(A)(4) applies to responses like the trial court found Mane's to be:

> **(4) Evasive or incomplete answer or response.** For purposes of division (A) of this rule, an evasive or incomplete answer or response shall be treated as a failure to answer or respond.

A staff note to a previous version of Civ.R. 37 explains the provision this way: "The discovery rules require complete and direct responses. Rule 37(A)(3) [now (4)] makes it clear that an incomplete or evasive answer is considered a failure to answer." Staff Notes, 7-1-08 Amendments, Civ.R. 37; *see also Buckner v. Washington Mut. Bank*, 12th Dist. Butler No. CA2014-01-012, 2014-Ohio-5189, ¶ 24 ("Civ.R. 37(A)(3) establishes that an evasive or incomplete answer is a failure to answer.").[4] A note from the Federal Rules Advisory Committee about the analogous provision in the federal rule, Fed.R.Civ.P. 37(a)(4), states:

> Subdivision (a) (3) [now (4)]. This new provision makes clear that an evasive or incomplete answer is to be considered, for purposes of subdivision (a), a failure to answer. The courts have consistently held that they have the power to compel adequate answers. * * * This power is recognized and incorporated into the rule.

Federal Rules Advisory Committee's Note, Federal Rule 37, 1967 Preliminary Draft.[5] A note from the federal committee about the 1993 amendments to the federal rule is particularly illuminating in this case:

> Under revised paragraph (3) [now [4]), evasive or incomplete disclosures and responses to interrogatories and production requests are treated as failures to disclose or respond.

---

4. The staff note and *Buckner* refer to the 2008 version of the rule. In the 2016 amendments, division (A)(3) was moved to (A)(4).

5. Like the Ohio rule, later amendments to the federal rule saw division (A)(3) move to (A)(4).

- 13 -

> Interrogatories and *requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request*, and to do so is subject to appropriate sanctions under subdivision (a).

(Emphasis added.)  Notes of Advisory Committee, 1993 amendments, Fed.R.Civ.P. 37.

{¶ 25} Boiled down, the trial court in this case found that Mane's sin was in providing incomplete and evasive responses.  The court found that Mane's responses were based on a "hyper-technical and overly legalistic" reading of appellees requests for production.  In its responses, Mane both objected to the requests and produced responsive documents.  The court found that the responses were inadequate to communicate that the documents Mane produced were not, in fact, every document that it possessed responsive to the requests.  Such an inadequate response can render the response evasive and incomplete.  *See Lynn v. Monarch Recovery Mgmt.*, 285 F.R.D. 350 (D.Md.2012) (stating that "[a] party answering interrogatories must provide to the requesting party all 'information that is available to it and that can be given without undue labor and expense,'" and finding responses incomplete and evasive and "tantamount to a failure to answer under Rule 37(a)(4)").

{¶ 26} Based on the trial court's findings and the congeries of record evidence, the situation here was the sort to which Civ.R. 37(A)(4) is meant to apply.  Which means that it was "necessary * * * to apply to the court for an order to compel discovery pursuant to Civ. R. 37(A) and to obtain an order of the court which must then be violated before a second motion is used to obtain sanctions for failure to comply with the order."  *Dafco, Inc. v. Reynolds*, 9 Ohio App.3d 4, 5 (10th Dist.1983) (stating that this is the procedure "in the instance of all failures to make discovery other than those specified by Civ.R. 37(D)").  Accordingly, Mane's incomplete and evasive responses required plaintiffs and OLI to file a motion for an order compelling responses.  *See* Civ.R. 34(B)(1); Civ.R.

37(A)(3)(a). The trial court could then have ordered Mane to respond and to pay plaintiffs' and OLI's expenses. *See* Civ.R. 37(A)(5)(a). Had Mane failed to comply with that order sanctions may have been appropriate. *See* Civ.R. 37(B).

## C. Sanctions were not permitted, nor do they appear to be justified

{¶ 27} Neither plaintiffs nor OLI filed a motion asking the trial court for an order to compel under Civ.R. 37(A). Rather, Plaintiffs' motion for sanctions, in addition to requesting expenses caused by Mane's alleged failure to supplement, asked for an order under Civ.R. 37(C) that Mane produce a deposition witness to answer questions about the information in the newly produced documents and for an order that Mane "supplement" its discovery responses to interrogatories and requests for production. OLI's combined motion to compel and for sanctions similarly asked the court to compel Mane to produce not documents but a deposition witness. In short, it appears that with the belated January document production Mane produced all the responsive documents. What the plaintiffs and OLI wanted then was a corporate witness whom they could question about the information in the documents.

{¶ 28} We also note that when OLI obtained the public records about Mane's involvement with OSHA, OLI did not immediately file a motion to compel or for sanctions. Rather, OLI told Mane what it had found, and soon after, Mane produced the 2,700 pages of documents that it had been withholding. Mane had already produced the documents, therefore, by the time plaintiffs and OLI filed their motions to compel and for sanctions. Neither party sought to compel a broader response.

{¶ 29} Also, it appears that both plaintiffs and OLI were fully aware that the scope of all Mane's discovery responses was limited to the Lebanon, Ohio, facility. They knew that Mane had made a general objection to a broader (nationwide) scope for the requested records. But neither plaintiff nor OLI had complained about this general

objection before. Since Mane has now produced the documents that it had been withholding, we see little justification for sanctions.

### III. Conclusion

{¶ 30} The second assignment of error is sustained. Neither the trial court's findings nor the record evidence shows that Mane violated its Civ.R. 26(E) duty to supplement discovery responses. Therefore, the trial court erred by granting OLI's combined motion to compel and motion for sanctions and by granting in part plaintiffs' motion for sanctions based on Civ.R. 37(C). And it follows that the court also erred by imposing sanctions (OLI's and plaintiffs' attorney fees and costs) on Mane under that division of Rule 37.[6]

{¶ 31} Given our resolution of the second assignment of error, Mane's six other assignments of error are moot, as each one challenges either the finding of discovery violations or the imposition of sanctions based on Civ.R. 37(C).

{¶ 32} The trial court's March 24, 2021 order, which granted the motions to compel and for sanctions, is reversed; and its June 1, 2023 order awarding attorney fees and costs as sanctions is vacated.

PIPER and BYRNE, JJ., concur.

---

6. We acknowledge that our prior opinion may have inadvertently led the trial court down an unintended path. In that opinion, we stated that "if the trial court desires to award sanctions for the Civ.R. 37(C) violations," it should "issue a final appealable order accordingly." *Mundy I*, 2023-Ohio-1321, at ¶ 36. This statement merely reflected the trial court's March 24, 2021 entry and decision, which found that sanctions under Civ.R. 37 were appropriate. In the previous appeal, no final order was actually issued imposing sanctions under Civ.R. 37. Consequently, we did not specifically address the propriety of sanctions under this rule. We recognize how our statement could have been misconstrued by the trial court as an endorsement, and we sincerely regret any confusion it may have caused.